PANAVISION INTERNATIONAL, L.P.,
a Delaware Limited Partnership,
Plaintiff–Appellee,

v.

Dennis TOEPPEN;  Network Solutions,
Inc., a District of Columbia Corpo-
ration, Defendants–Appellants.

No. 97–55467.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 3, 1998.

Decided April 17, 1998.

Joseph D. Murphy, Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, P.C., Champaign, IL, for defendants-appellants.

William E. Thomson, Jr. and Micah R. Jacobs, McCutchen, Doyle, Brown & Enersen, LLP, Ivy Kagan Bierman, Charles M. Stern and Edward L. Adams, Katten Muchin & Zavis, Los Angeles, CA, for plaintiff-appellee.

Before: BRUNETTI, THOMPSON and T.G. NELSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

This case presents two novel issues. We are asked to apply existing rules of personal jurisdiction to conduct that occurred, in part, in "cyberspace." In addition, we are asked to interpret the Federal Trademark Dilution Act as it applies to the Internet.

Panavision accuses Dennis Toeppen of being a "cyber pirate" who steals valuable trademarks and establishes domain names on the Internet using these trademarks to sell the domain names to the rightful trademark owners.

The district court found that under the "effects doctrine," Toeppen was subject to personal jurisdiction in California. *Panavision International, L.P. v. Toeppen*, 938 F.Supp. 616, 620 (C.D.Cal.1996). The district court then granted summary judgment in favor of Panavision, concluding that Toeppen's conduct violated the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c), and the California Anti-dilution statute, California Business & Professions Code § 14330. *Panavision International, L.P. v. Toeppen*, 945 F.Supp. 1296, 1306 (C.D.Cal.1996).

Toeppen appeals. He argues that the district court erred in exercising personal jurisdiction over him because any contact he had with California was insignificant, emanating solely from his registration of domain names on the Internet, which he did in Illinois. Toeppen further argues that the district court erred in granting summary judgment because his use of Panavision's trademarks on the Internet was not a commercial use and did not dilute those marks.

We have jurisdiction under 28 U.S.C. § 1291 and we affirm. The district court's exercise of jurisdiction was proper and comported with the requirements of due process.

Toeppen did considerably more than simply register Panavision's trademarks as his domain names on the Internet. He registered those names as part of a scheme to obtain money from Panavision. Pursuant to that scheme, he demanded $13,000 from Panavision to release the domain names to it. His acts were aimed at Panavision in California, and caused it to suffer injury there.

We also conclude Panavision was entitled to summary judgment under the federal and state dilution statutes. Toeppen made commercial use of Panavision's trademarks and his conduct diluted those marks.

## I

## BACKGROUND

The Internet is a worldwide network of computers that enables various individuals and organizations to share information. The Internet allows computer users to access millions of web sites and web pages. A web page is a computer data file that can include names, words, messages, pictures, sounds, and links to other information.

Every web page has its own web site, which is its address, similar to a telephone number or street address. Every web site on the Internet has an identifier called a "domain name." The domain name often consists of a person's name or a company's name or trademark. For example, Pepsi has a web page with a web site domain name consisting of the company name, Pepsi, and .com, the "top level" domain designation: Pepsi.com.[1]

The Internet is divided into several "top level" domains: .edu for education; .org for organizations; .gov for government entities; .net for networks; and .com for "commercial" which functions as the catchall domain for Internet users.

Domain names with the .com designation must be registered on the Internet with Network Solutions, Inc. ("NSI"). NSI registers names on a first-come, first-served basis for a $100 registration fee. NSI does not make

---

1. We use the arrow keys ( ) to set out a domain name or a web site. These arrows are not part of the name or the site.

a determination about a registrant's right to use a domain name. However, NSI does require an applicant to represent and warrant as an express condition of registering a domain name that (1) the applicant's statements are true and the applicant has the right to use the requested domain name; (2) the "use or registration of the domain name . . . does not interfere with or infringe the rights of any third party in any jurisdiction with respect to trademark, service mark, trade name, company name or any other intellectual property right"; and (3) the applicant is not seeking to use the domain name for any unlawful purpose, including unfair competition.

A domain name is the simplest way of locating a web site. If a computer user does not know a domain name, she can use an Internet "search engine." To do this, the user types in a key word search, and the search will locate all of the web sites containing the key word. Such key word searches can yield hundreds of web sites. To make it easier to find their web sites, individuals and companies prefer to have a recognizable domain name.

Panavision holds registered trademarks to the names "Panavision" and "Panaflex" in connection with motion picture camera equipment. Panavision promotes its trademarks through motion picture and television credits and other media advertising.

In December 1995, Panavision attempted to register a web site on the Internet with the domain name Panavision.com. It could not do that, however, because Toeppen had already established a web site using Panavision's trademark as his domain name. Toeppen's web page for this site displayed photographs of the City of Pana, Illinois.

On December 20, 1995, Panavision's counsel sent a letter from California to Toeppen in Illinois informing him that Panavision held a trademark in the name Panavision and telling him to stop using that trademark and the domain name Panavision.com. Toeppen responded by mail to Panavision in California, stating he had the right to use the name Panavision.com on the Internet as his domain name. Toeppen stated:

If your attorney has advised you otherwise, he is trying to screw you. He wants to blaze new trails in the legal frontier at your expense. Why do you want to fund your attorney's purchase of a new boat (or whatever) when you can facilitate the acquisition of 'PanaVision.com' cheaply and simply instead?

Toeppen then offered to "settle the matter" if Panavision would pay him $13,000 in exchange for the domain name. Additionally, Toeppen stated that if Panavision agreed to his offer, he would not "acquire any other Internet addresses which are alleged by Panavision Corporation to be its property."

After Panavision refused Toeppen's demand, he registered Panavision's other trademark with NSI as the domain name Panaflex.com. Toeppen's web page for Panaflex.com simply displays the word "Hello."

Toeppen has registered domain names for various other companies including Delta Airlines, Neiman Marcus, Eddie Bauer, Lufthansa, and over 100 other marks. Toeppen has attempted to "sell" domain names for other trademarks such as intermatic.com to Intermatic, Inc. for $10,000 and americanstandard.com to American Standard, Inc. for $15,000.

Panavision filed this action against Toeppen in the District Court for the Central District of California. Panavision alleged claims for dilution of its trademark under the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c), and under the California Anti-dilution statute, California Business and Professions Code § 14330. Panavision alleged that Toeppen was in the business of stealing trademarks, registering them as domain names on the Internet and then selling the domain names to the rightful trademark owners. The district court determined it had personal jurisdiction over Toeppen, and granted summary judgment in favor of Panavision on both its federal and state dilution claims. This appeal followed.

II

DISCUSSION

A. Personal Jurisdiction

A district court's determination that personal jurisdiction can properly be exer-

cised is a question of law reviewable de novo when the underlying facts are undisputed. *Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1996). A district court's factual findings regarding jurisdiction are reviewed for clear error. *Adler v. Federal Rep. of Nig.*, 107 F.3d 720, 723 (9th Cir.1997).

There is no applicable federal statute governing personal jurisdiction in this case. Accordingly, we apply the law of California, the state in which the district court sits. *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir.1993). California's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent permitted by the Due Process Clause of the Constitution. Cal.Code Civ. P. § 410.10; *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir.1996). The issue we address, therefore, is whether the requirements of due process are satisfied by the district court's exercise of personal jurisdiction over Toeppen. *Core–Vent*, 11 F.3d at 1484.

Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction.

### 1. General Jurisdiction

■ General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984). The district court correctly concluded that it did not have general jurisdiction over Toeppen. Toeppen is domiciled in Illinois and his activities in California are not substantial or continuous and systematic. *See Toeppen*, 938 F.Supp. at 620.

### 2. Specific Jurisdiction

■ We apply a three-part test to determine if a district court may exercise specific jurisdiction:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the fo-

rum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995) (quotation omitted).

The first of these requirements is purposeful availment.

### a. Purposeful Availment

■ The purposeful availment requirement ensures that a nonresident defendant will not be haled into court based upon "random, fortuitous or attenuated" contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985). This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995). It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. *Id.*

### i. Application to the Internet

Applying principles of personal jurisdiction to conduct in cyberspace is relatively new. "With this global revolution looming on the horizon, the development of the law concerning the permissible scope of personal jurisdiction based on Internet use is in its infant stages. The cases are scant." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123 (W.D.Pa.1997). We have, however, recently addressed the personal availment aspect of personal jurisdiction in a case involving the Internet. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997).

In *Cybersell*, an Arizona corporation, Cybersell, Inc. ("Cybersell AZ"), held a registered servicemark for the name Cybersell. A Florida corporation, Cybersell, Inc. ("Cybersell FL"), created a web site with the domain name cybsell.com. The web page had the word "Cybersell" at the top and the phrase, "Welcome to Cybersell!" *Id.* at 415.

Cybersell AZ claimed that Cybersell FL infringed its registered trademark and brought an action in the district court in Arizona. We held the Arizona court could not exercise personal jurisdiction over Cybersell FL, because it had no contacts with Arizona other than maintaining a web page accessible to anyone over the Internet. *Id.* at 419–420.

In reaching this conclusion in *Cybersell*, we carefully reviewed cases from other circuits regarding how personal jurisdiction should be exercised in cyberspace. We concluded that no court had ever held that an Internet advertisement alone is sufficient to subject a party to jurisdiction in another state. *Id.* at 418. In each case where personal jurisdiction was exercised, there had been "something more" to "indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." *Id.* Cybersell FL had not done this, and the district court could not exercise personal jurisdiction over it.

Personal jurisdiction was properly exercised, however, in *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). There, the Sixth Circuit held that a Texas resident who had advertised his product via a computer information service, CompuServe, located in Ohio, was subject to personal jurisdiction in Ohio. The court found that the Texas resident had taken direct actions that created a connection with Ohio. *Id.* at 1264. He subscribed to CompuServe, he loaded his software onto the CompuServe system for others to use, and he advertised his software on the CompuServe system. *Id.*

In the present case, the district court's decision to exercise personal jurisdiction over Toeppen rested on its determination that the purposeful availment requirement was satisfied by the "effects doctrine." That doctrine was not applicable in our *Cybersell* case. There, we said: "Likewise unpersuasive is Cybersell AZ's reliance on *Panavision International v. Toeppen,* 938 F.Supp. 616 (C.D.Cal.1996), [the district court's published opinion in this case], where the court found the 'purposeful availment' prong satisfied by the effects felt in California, the home state of Panavision, from Toeppen's alleged out-of-state scheme to register domain names using the trademarks of California companies, including Panavision, for the purpose of extorting fees from them. Again, there is nothing analogous about Cybersell FL's conduct." *Cybersell,* 130 F.3d at 420 n. 6.

Our reference in *Cybersell* to "the effects felt in California" was a reference to the effects doctrine.

#### ii. The Effects Doctrine

■ In tort cases, jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum state. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir. 1995); *see Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (establishing an "effects test" for intentional action aimed at the forum state). Under *Calder,* personal jurisdiction can be based upon: "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered-and which the defendant knows is likely to be suffered-in the forum state." *Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1486 (9th Cir.1993).

As the district court correctly stated, the present case is akin to a tort case. *Panavision,* 938 F.Supp. at 621; *see also Ziegler,* 64 F.3d at 473 (application of the purposeful availment prong differs depending on whether the underlying claim is a tort or contract claim). Toeppen purposefully registered Panavision's trademarks as his domain names on the Internet to force Panavision to pay him money. *Panavision,* 938 F.Supp. at 621. The brunt of the harm to Panavision was felt in California. Toeppen knew Panavision would likely suffer harm there because, although at all relevant times Panavision was a Delaware limited partnership, its principal place of business was in California, and the heart of the theatrical motion picture and television industry is located there. *Id.* at 621–622.

The harm to Panavision is similar to the harm to the Indianapolis Colts football team in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership,* 34 F.3d 410 (7th Cir.1994). There, the Indianapolis Colts brought a trademark infringement action in the district court in Indiana

against the Canadian Football League's new team, the "Baltimore CFL Colts." *Id.* at 411. The Seventh Circuit held that the Baltimore CFL Colts team was subject to personal jurisdiction in Indiana even though its only activity directed toward Indiana was the broadcast of its games on nationwide cable television. *Id.* Because the Indianapolis Colts used their trademarks in Indiana, any infringement of those marks would create an injury which would be felt mainly in Indiana, and this, coupled with the defendant's "entry" into the state by the television broadcasts, was sufficient for the exercise of personal jurisdiction. *Id.*

Toeppen argues he has not directed any activity toward Panavision in California, much less "entered" the state. He contends that all he did was register Panavision's trademarks on the Internet and post web sites using those marks; if this activity injured Panavision, the injury occurred in cyberspace.[2]

██ We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. *Cybersell,* 130 F.3d at 418. As we said in *Cybersell,* there must be "something more" to demonstrate that the defendant directed his activity toward the forum state. *Id.* Here, that has been shown. Toeppen engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision. His conduct, as he knew it likely would, had the effect of injuring Panavision in California where Panavision has its principal place of business and where the movie and television industry is centered.[3] Under the "effects test," the purposeful availment requirement necessary for specific, personal jurisdiction is satisfied.

### b. Defendant's Forum–Related Activities

The second requirement for specific, personal jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities. *Ziegler,* 64 F.3d at 474. We must determine if the plaintiff Panavision would not have been injured "but for" the defendant Toeppen's conduct directed toward Panavision in California. *See Ballard,* 65 F.3d at 1500.

This requirement is satisfied. Toeppen's registration of Panavision's trademarks as his own domain names on the Internet had the effect of injuring Panavision in California. But for Toeppen's conduct, this injury would not have occurred. Panavision's claims arise out of Toeppen's California-related activities.

### c. Reasonableness

██ Even if the first two requirements are met, in order to satisfy the Due Process Clause, the exercise of personal jurisdiction must be reasonable. *Ziegler,* 64 F.3d at 474–75. For jurisdiction to be reasonable, it must comport with "fair play and substantial justice." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core–Vent,* 11 F.3d at 1487 (citing *Burger King,* 471 U.S. at 476–77, 105 S.Ct. at 2184–85).

As we have said, Toeppen purposefully directed his activities at Panavision in California. This placed the burden on him to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

2. In a subset of this argument, Toeppen contends that a large organization such as Panavision does not suffer injury in one location. *See Cybersell,* 130 F.3d at 420 (A corporation "does not suffer harm in a particular geographic location in the same sense that an individual does.") However, in *Core–Vent,* we stated that *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), does not preclude a determination that a corporation suffers the brunt of harm in its principal place of business. *Core–Vent,* 11 F.3d at 1487.

Panavision was previously a limited partnership and is now a corporation. Under either form of business organization, however, the brunt of the harm suffered by Panavision was in the state where it maintained its principal place of business, California.

3. We discuss the nature of Panavision's injury in following Part B.

In addressing the question of reasonableness, we consider seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Burger King*, 471 U.S. at 476–77, 105 S.Ct. at 2184–85. No one factor is dispositive; a court must balance all seven. *Core–Vent*, 11 F.3d at 1488.

The district court found that Toeppen had not presented a compelling case that jurisdiction was unreasonable. *Panavision*, 938 F.Supp. at 622. We agree. The balance of the *Burger King* factors which we articulated in *Core–Vent* tips in favor of the exercise of personal jurisdiction.

### i. Purposeful Interjection

"Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." *Core–Vent*, 11 F.3d at 1488 (citing *Insurance Company of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir.1981)). Here, the degree of interjection was substantial.

Toeppen's acts were aimed at Panavision in California. He registered Panavision's trademarks as his domain names, knowing that this would likely injure Panavision in California. In addition, he sent a letter to Panavision in California demanding $13,000 to release his registration of Panavision.com. The purposeful interjection factor weighs strongly in favor of the district court's exercise of personal jurisdiction.

### ii. Defendant's Burden in Litigating

A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the "inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir.1995) (citing *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir.1991)).

The burden on Toeppen as an individual living in Illinois to litigate in California is significant, but the inconvenience is not so great as to deprive him of due process. As the district court stated, " 'in this era of fax machines and discount air travel' requiring Toeppen to litigate in California is not constitutionally unreasonable." *Panavision*, 938 F.Supp. at 622 (quoting *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir.1990)).

### iii. Sovereignty

This factor concerns the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty of Illinois, Toeppen's state of domicile. *Core–Vent*, 11 F.3d at 1489. Such a conflict is not a concern in this case. The allegations in support of Panavision's state law claim and those in support of its federal claim under the Trademark Dilution Act require the same analysis. The federal analysis would be the same in either Illinois or California. In this circumstance, the exercise of jurisdiction by a federal court in California does not implicate sovereignty concerns of Illinois.

### iv. Forum State's Interest

"California maintains a strong interest in providing an effective means of redress for its residents tortiously injured." *Gordy v. Daily News, L.P.*, 95 F.3d 829, 836 (9th Cir.1996) (citing *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1200 (9th Cir.1988)). Panavision's principal place of business is in California. This factor weighs in Panavision's favor.

### v. Efficient Resolution

This factor focuses on the location of the evidence and witnesses. *Caruth*, 59 F.3d at 129. It is no longer weighed heavily given the modern advances in communication and transportation. *Id.* In any event, due to the limited amount of evidence and few potential

witnesses in the present litigation, this factor is probably neutral.

### vi. Convenient & Effective Relief for Plaintiff

In evaluating the convenience and effectiveness of relief for the plaintiff, we have given little weight to the plaintiff's inconvenience. *Ziegler,* 64 F.3d at 476. It may be somewhat more costly and inconvenient for Panavision to litigate in another forum, but the burden on Panavision is relatively slight. This factor is essentially neutral, perhaps weighing slightly in Toeppen's favor.

### vii. Alternative Forum

Panavision has not demonstrated the unavailability of an alternative forum. In this case, Illinois is an alternative forum. As stated above, it may be more costly and inconvenient for Panavision to litigate in Illinois, but this is not an unreasonable burden. This factor weighs in Toeppen's favor.

In balancing the *Burger King* factors, we conclude that although some factors weigh in Toeppen's favor, he failed to present a compelling case that the district court's exercise of jurisdiction in California would be unreasonable.

We conclude that all of the requirements for the exercise of specific, personal jurisdiction are satisfied. The district court properly exercised personal jurisdiction over Toeppen. We next consider the district court's summary judgment in favor of Panavision on its trademark dilution claims.

## B. Trademark Dilution Claims

The Federal Trademark Dilution Act provides:

> The owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark....

15 U.S.C. § 1125(c).

The California Anti-dilution statute is similar. *See* Cal. Bus. & Prof.Code § 14330. It prohibits dilution of "the distinctive quality"

of a mark regardless of competition or the likelihood of confusion. The protection extends only to strong and well recognized marks. Panavision's state law dilution claim is subject to the same analysis as its federal claim.

In order to prove a violation of the Federal Trademark Dilution Act, a plaintiff must show that (1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. 15 U.S.C. § 1125(c).

Toeppen does not challenge the district court's determination that Panavision's trademark is famous, that his alleged use began after the mark became famous, or that the use was in commerce. Toeppen challenges the district court's determination that he made "commercial use" of the mark and that this use caused "dilution" in the quality of the mark.

### 1. Commercial Use

Toeppen argues that his use of Panavision's trademarks simply as his domain names cannot constitute a commercial use under the Act. Case law supports this argument. *See Panavision International, L.P. v. Toeppen,* 945 F.Supp. 1296, 1303 (C.D.Cal. 1996) ("Registration of a trade[mark] as a domain name, without more, is not a commercial use of the trademark and therefore is not within the prohibitions of the Act."); *Academy of Motion Picture Arts & Sciences v. Network Solutions, Inc.,* —— F.Supp. ——, 1997 WL 810472 (C.D.Cal. Dec.22, 1997) (the mere registration of a domain name does not constitute a commercial use); *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp. 949 (C.D.Cal.1997) (NSI's acceptance of a domain name for registration is not a commercial use within the meaning of the Trademark Dilution Act).

Developing this argument, Toeppen contends that a domain name is simply an address used to locate a web page. He asserts

that entering a domain name on a computer allows a user to access a web page, but a domain name is not associated with information on a web page. If a user were to type Panavision.com as a domain name, the computer screen would display Toeppen's web page with aerial views of Pana, Illinois. The screen would not provide any information about "Panavision," other than a "location window" which displays the domain name. Toeppen argues that a user who types in Panavision.com, but who sees no reference to the plaintiff Panavision on Toeppen's web page, is not likely to conclude the web page is related in any way to the plaintiff, Panavision.

Toeppen's argument misstates his use of the Panavision mark. His use is not as benign as he suggests. Toeppen's "business" is to register trademarks as domain names and then sell them to the rightful trademark owners. He "act[s] as a 'spoiler,' preventing Panavision and others from doing business on the Internet under their trademarked names unless they pay his fee." *Panavision,* 938 F.Supp. at 621. This is a commercial use. *See Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227, 1230 (N.D.Ill.1996) (stating that "[o]ne of Toeppen's business objectives is to profit by the resale or licensing of these domain names, presumably to the entities who conduct business under these names.").

As the district court found, Toeppen traded on the value of Panavision's marks. So long as he held the Internet registrations, he curtailed Panavision's exploitation of the value of its trademarks on the Internet, a value which Toeppen then used when he attempted to sell the Panavision.com domain name to Panavision.

In a nearly identical case involving Toeppen and Intermatic Inc., a federal district court in Illinois held that Toeppen's conduct violated the Federal Trademark Dilution Act. *Intermatic,* 947 F.Supp. at 1241. There, Intermatic sued Toeppen for registering its trademark on the Internet as Toeppen's domain name, intermatic.com. It was "conceded that one of Toeppen's intended uses for registering the Intermatic mark was to eventually sell it back to Intermatic or to some other party." *Id.* at 1239. The court found that "Toeppen's intention to arbitrage the 'intermatic.com' domain name constitute[d] a commercial use." *Id.See also Teletech Customer Care Management, Inc. v. Tele–Tech Co.,* 977 F.Supp. 1407 (C.D.Cal.1997) (granting a preliminary injunction under the Trademark Dilution Act for use of a trademark as a domain name).

Toeppen's reliance on *Holiday Inns, Inc. v. 800 Reservation, Inc.,* 86 F.3d 619 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 770, 136 L.Ed.2d 715 (1997) is misplaced. In *Holiday Inns,* the Sixth Circuit held that a company's use of the most commonly *misdialed* number for Holiday Inns' 1–800 reservation number was not trademark infringement.

*Holiday Inns* is distinguishable. There, the defendant did not use Holiday Inns' trademark. Rather, the defendant selected the most commonly misdialed telephone number for Holiday Inns and attempted to capitalize on consumer confusion.

A telephone number, moreover, is distinguishable from a domain name because a domain name is associated with a word or phrase. A domain name is similar to a "vanity number" that identifies its source. Using Holiday Inns as an example, when a customer dials the vanity number "1–800–Holiday," she expects to contact Holiday Inns because the number is associated with that company's trademark. A user would have the same expectation typing the domain name Holiday-Inns.com. The user would expect to retrieve Holiday Inns' web page.[4]

Toeppen made a commercial use of Panavision's trademarks. It does not matter that he did not attach the marks to a product. Toeppen's commercial use was his attempt to sell the trademarks themselves.[5] Under the

---

4. *See* Carl Oppedahl, *Analysis and Suggestions Regarding NSI Domain Name Trademark Dispute Policy,* 7 Fordham Intell. Prop. Media & Ent. L.J. 73 (1996). Once the domain name system was established, "nobody would have expected xerox.com to map to anything but the Xerox corporation." *Id.* at 95.

5. *See Boston Pro. Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.,* 510 F.2d 1004 (1975),

Federal Trademark Dilution Act and the California Anti-dilution statute, this was sufficient commercial use.

### 2. Dilution

█ "Dilution" is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127.[6]

Trademark dilution on the Internet was a matter of Congressional concern. Senator Patrick Leahy (D–Vt.) stated:

> [I]t is my hope that this anti-dilution statute can help stem the use of deceptive Internet addresses taken by those who are choosing marks that are associated with the products and reputations of others.

141 Cong. Rec. § 19312–01 (daily ed. Dec. 29, 1995) (statement of Sen. Leahy). *See also Teletech Customer Care Management, Inc. v. Tele–Tech Co., Inc.*, 977 F.Supp. 1407, 1413 (C.D.Cal.1997).

█ To find dilution, a court need not rely on the traditional definitions such as "blurring" and "tarnishment."[7] Indeed, in concluding that Toeppen's use of Panavision's trademarks diluted the marks, the district court noted that Toeppen's conduct varied from the two standard dilution theories of blurring and tarnishment. *Panavision*, 945 F.Supp. at 1304. The court found that Toeppen's conduct diminished "the capacity of the Panavision marks to identify and distinguish Panavision's goods and services on the Internet." *Id. See also Intermatic*, 947 F.Supp. at 1240 (Toeppen's registration of the domain name, "lessens the capacity of Intermatic to identify and distinguish its goods and services by means of the Internet.").

This view is also supported by *Teletech*. There, TeleTech Customer Care Management Inc., ("TCCM"), sought a preliminary injunction against Tele–Tech Company for use of TCCM's registered service mark, "TeleTech," as an Internet domain name. *Teletech*, 977 F.Supp. at 1410. The district court issued an injunction, finding that TCCM had demonstrated a likelihood of success on the merits on its trademark dilution claim. *Id.* at 1412. The court found that TCCM had invested great resources in promoting its servicemark and Teletech's registration of the domain name teletech.com on the Internet would most likely dilute TCCM's mark. *Id.* at 1413.

Toeppen argues he is not diluting the capacity of the Panavision marks to identify goods or services. He contends that even though Panavision cannot use Panavision.com and Panaflex.com as its domain name ad-

---

which involved the sale of National Hockey League logos. The defendant was selling the logos themselves, unattached to a product (such as a hat or sweatshirt). The court stated: "The difficulty with this case stems from the fact that a reproduction of the trademark itself is being sold, unattached to any other goods or services." *Id.* at 1010. The court concluded that trademark law should protect the trademark itself. "Although our decision here may slightly tilt the trademark laws from the purpose of protecting the public to the protection of the business interests of plaintiffs, we think that the two become ... intermeshed...." *Id.* at 1011. "Whereas traditional trademark law sought primarily to protect consumers, dilution laws place more emphasis on protecting the investment of the trademark owners." *Panavision*, 945 F.Supp. at 1301.

**6.** The Lanham Act, 15 U.S.C. § 1127, provides definitions for the Trademark Dilution Act, 15 U.S.C. § 1125(c).

**7.** Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods

or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product. *Ringling Bros.-Barnum & Bailey, Combined Shows, Inc. v. B.E. Windows, Corp.*, 937 F.Supp. 204, 209 (S.D.N.Y.1996) (citing *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir.1994)); Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 24:68 at 24–111 (4th ed.1997); *see also Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Development*, 955 F.Supp. 605, 614–15 (E.D.Va.1997) (discussing the inadequacies of current definitions of blurring and determining that blurring requires consumers to mistakenly associate a defendant's mark with a plaintiff's famous trademark).

Tarnishment occurs when a famous mark is improperly associated with an inferior or offensive product or service. *McCarthy*, § 24:104 at 24–172 to 173; *Ringling Bros.*, 937 F.Supp. at 209 (citing *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir.1996)).

dresses, it can still promote its goods and services on the Internet simply by using some other "address" and then creating its own web page using its trademarks.

We reject Toeppen's premise that a domain name is nothing more than an address. A significant purpose of a domain name is to identify the entity that owns the web site.[8] "A customer who is unsure about a company's domain name will often guess that the domain name is also the company's name." *Cardservice Int'l v. McGee*, 950 F.Supp. 737, 741 (E.D.Va.1997). "[A] domain name mirroring a corporate name may be a valuable corporate asset, as it facilitates communication with a customer base." *MTV Networks, Inc. v. Curry*, 867 F.Supp. 202, 203–204 n. 2 (S.D.N.Y.1994).

Using a company's name or trademark as a domain name is also the easiest way to locate that company's web site. Use of a "search engine" can turn up hundreds of web sites, and there is nothing equivalent to a phone book or directory assistance for the Internet. *See Cardservice*, 950 F.Supp. at 741.

Moreover, potential customers of Panavision will be discouraged if they cannot find its web page by typing in "Panavision.com," but instead are forced to wade through hundreds of web sites. This dilutes the value of Panavision's trademark. We echo the words of Judge Lechner, quoting Judge Wood: "Prospective users of plaintiff's services who mistakenly access defendant's web site may fail to continue to search for plaintiff's own home page, due to anger, frustration or the belief that plaintiff's home page does not exist." *Jews for Jesus v. Brodsky*, 993 F.Supp. 282, 306–07 (D.N.J. 1998) (Lechner, J., quoting Wood, J. in *Planned Parenthood v. Bucci*, 1997 WL 133313 at \*4); *see also Teletech*, 977 F.Supp. at 1410 (finding that use of a search engine can generate as many as 800 to 1000 matches and it is "likely to

deter web browsers from searching for Plaintiff's particular web site").

Toeppen's use of Panavision.com also puts Panavision's name and reputation at his mercy. *See Intermatic*, 947 F.Supp. at 1240 ("If Toeppen were allowed to use 'intermatic.com,' Intermatic's name and reputation would be at Toeppen's mercy and could be associated with an unimaginable amount of messages on Toeppen's web page.").

We conclude that Toeppen's registration of Panavision's trademarks as his domain names on the Internet diluted those marks within the meaning of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), and the California Anti-dilution statute, Cal.Bus. & Prof.Code § 14330.

## III

## CONCLUSION

Toeppen engaged in a scheme to register Panavision's trademarks as his domain names on the Internet and then to extort money from Panavision by trading on the value of those names. Toeppen's actions were aimed at Panavision in California and the brunt of the harm was felt in California. The district court properly exercised personal jurisdiction over Toeppen.

We also affirm the district court's summary judgment in favor of Panavision under the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), and the California Anti-dilution statute, Cal.Bus. & Prof.Code § 14330. Toeppen made commercial use of Panavision's trademarks and his conduct diluted those marks.

**AFFIRMED.**

---

**8.** This point was made in a recent legal periodical:

> The domain name serves a dual purpose. It marks the location of the site within cyberspace, much like a postal address in the real world, but it may also indicate to users some information as to the content of the site, and, in instances of well-known trade names or

trademarks, may provide information as to the origin of the contents of the site.

Peter Brown, *New Issues in Internet Litigation*, 17th Annual Institute on Computer Law: The Evolving Law of the Internet–Commerce, Free Speech, Security, Obscenity and Entertainment, 471 Prac. L. Inst. 151 (1997).