MIRAGE RESORTS, INC., a Nevada corporation, Bellagio, a Nevada corporation, New York New York Hotel & Casino, a Nevada limited liability company, Mandalay Resort Group, a Nevada corporation, Ramparts, Inc., a Nevada corporation, New Castle Corp., a Nevada corporation, Aladdin Gaming, LLC, a Nevada limited liability corporation, Mare–Bear, Inc., a Nevada corporation, Station Casinos, Inc., a Nevada corporation, Victoria Partners, a Nevada partnership, Plaintiffs,

v.

Nicholas STIRPE, an individual, John Does 1–XX and Roe Corporations 1–XX, Defendants.

No. CV–S–99–1505 RLH.

United States District Court, D. Nevada.

Oct. 4, 2000.

Michael McCue, Whitney Thier, Quirk & Tratos, Las Vegas, NV, for Aladdin Gaming, LLC, Bellagio Hotel & Resort, M G M Grand Hotel, Inc., Mandalay Resort Group, Mare Bear, Inc., Mirage Resorts, Inc., New Castle Corporation, New York New York Hotel Casino, Ramparts, Inc., Station Casinos, Inc., Victoria Partners, Plaintiffs.

Douglas Clark, Law Office of Douglas H. Clark, Las Vegas, NV, for Stirpe, Nicholas Dismissed Per # 23, Defendants.

## ORDER

HUNT, District Judge.

### Plaintiffs' Motion for Summary Judgment (# 21)

Before this Court is **Plaintiffs' Motion for Summary Judgment** (# 21 filed June 26, 2000) and **Plaintiffs' Reply in Support of Their Motion for Summary Judgment** (# 22 filed on July 28, 2000). Defendants have failed to file a response to Plaintiffs' Motion for Summary Judgment.

Plaintiffs are owners and/or operators of the well known resort hotel casinos located

on the world famous "Las Vegas Strip" in Las Vegas, Nevada, Bellagio, Mirage, Golden Nugget, MGM Grand, New York–New York, Mandalay Bay, Luxor, Excalibur, Circus Circus, Monte Carlo, Aladdin, Stardust and Palace Station. Plaintiffs own numerous federal trademarks for their resort hotel casino names. For example, Plaintiff Mirage Resorts owns federal trademarks for "Mirage" for resort hotel services, "Mirage" for casino services, "Mirage" and design for casino and resort hotel services and owns a pending federal trademark application for travel agency services.

Defendant Nicholas Stirpe has registered fifteen domain names containing Plaintiffs' trademarks, <alladinhotelcasino.com>, <bellagiohotelcasino.com>, <circuscircuslasvegas.com>, <excaliburhotelcasino.com>, <excaliburlasvegas.com>, <goldennuggetlasvegas.com>, <luxorhotelcasino.com>, <mgmgrandhotelcasino.com>, <mgmhotelcasino.com>, <mandalaybayresorthotel.com>, <miragehotelcasino.com>, <montecarlohotelcasino.com>, <newyorknewyorklasvegas.com>, <palacestationlasvegas.com>, <stardusthotelcasino.com> (the "Domain Names").

Plaintiffs filed a Complaint against Defendant on October 27, 1999 seeking damages and injunctive relief for Trademark Infringement under 15 U.S.C. § 1114, Unfair Competition under to 15 U.S.C. § 1125(a), Trademark Dilution under 15 U.S.C 1125(c), Common Law Trademark Infringement, Deceptive Trade Practices under Nevada State law and Intentional Interference with Prospective Economic Advantage (# 1). Defendant filed an answer to the Complaint on November 30, 1999(# 5). On January 13, 2000, Plaintiffs filed a First Amended Complaint for Damages and Injunctive Relief (# 7). The Amended Complaint added a claim for relief under the Anti–Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), which became effective on November 29, 1999, after Plaintiffs' suit had already been filed.

On January 27, 2000 Plaintiffs filed a Motion for Preliminary Injunction (# 9) to enjoin Defendant from violating the Lanham Act by cybersquatting, and from infringing upon and diluting Plaintiffs' trademarks. On March 13, 2000, the preliminary injunction was granted (# 17) and Defendant was ordered to transfer ownership of the Domain Names. To date, Defendant has failed to comply with the terms of this injunction.

Plaintiffs move for summary judgment of their Anti–Cybersquatting Consumer Protection Act, Trademark Infringement and Dilution claims, and are seeking attorney fees, permanent injunctive relief and damages for corrective advertising. For the reasons set forth below, the Court grants Plaintiffs motion for summary judgment of their Trademark Infringement and Dilution claims, but declines to grant summary judgment under the Anti–Cybersquatting Consumer Protection Act.

## I. BACKGROUND

The Internet, or worldwide web, is a network of computers that facilitates the sharing of information between various individuals, organizations and companies throughout the world. Through the Internet, users are able to gain access to the millions of web sites and web pages of other users. A web page is a computer data file that may contain text, pictures, images, sounds, links to other web pages and other information. Every web page has a web site, identified as a "domain name," which is its address, similar to a street address. Domain names often consist of a person's name or an organization or company's name or trademark. For example, users may gain access to the

Coca Cola web site at either <cocacola.com> or <coke.com>. This system permits users to intuitively search for web sites of companies by simply typing in the company's name. In addition, web users may use an Internet "search engine" to conduct a web search for a specific word or sets of words. Such a search may yield hundreds, even thousands, of web sites.

In order to own a web site, an individual or organization need only register the domain name with and pay a small fee to Network Solutions, Inc (NSI). NSI distributes domain names on a first come first served basis and does not make any determination about whether or not a registrant has a right to use such a domain name.

Defendant Stirpe is a self employed investor who presently owns more than fifty Internet domain names that clearly implicate well known trademarks. For example, in addition to the fifteen web sites presently in dispute, Stirpe owns <bally-hotelcasinco.com>, <flamingohotelcasino.com>, <goldmansaks.com>, <goldmansach.com>, <chasemanhattan.com>, <chasemanhattansucks.com>, <wellsfargosucks.com>, <bofasucks.com>.

Plaintiffs have all spent substantial sums of money advertising and promoting their properties throughout the United States in the print and broadcast media and on the Internet. Each plaintiff maintains a web site on the World Wide Web to promote its properties. Additionally, Plaintiffs' marks have been promoted on the interior and exterior of their hotel casinos, on signage, gaming chips and tokens, consumer products and novelty items sold at and by the resort hotel casinos. Millions of consumers have been exposed to Plaintiffs' trade-

marks and have visited Plaintiffs' properties.

Plaintiffs contend that Defendant is a "cybersquatter," a person who purchases domain names containing the well known trademarks or names of companies in order to extort money from those companies in exchange for the exclusive rights to use of the domain name.[1] Companies may pay large sums of money to cybersquatters in order to gain the use of a domain name that may be intuitive to web users, and in order to preserve the good will associated with their own name.

Defendant claims he was simply a man with an idea for a web site. He contends that he created the web site located at <lasvegas-hotelcasinos.com> with the goal of creating a "one-stop Internet shop for all Las Vegas hotel needs" (Ex. A, Stirpe letter dated Sept. 8, 1999). Defendant explains that he had this web site created in order to have something "substantial" to present to the hotel casinos, so that he could gain their serious consideration and participation in the site (Stirpe Dep. at 36–37). In addition, he envisioned eventually advertising many other related services such as car rentals on the web site (Stirpe Dep. at 22–23).

The web site contained a listing of major resort casinos in Las Vegas, including Plaintiffs', and the Domain Names for each resort. Upon clicking on the Domain Names, web users were taken to another page in Defendant's site rather than to Plaintiffs' actual web pages. Defendant's site purported to offer hotel reservations services, however, web users could not make reservations using Defendant's site. In fact, when visitors to Defendant's web

---

1. Senate Report No. 106–140 defines a cybersquatter as, "any person who, with bad-faith intent to profit from the goodwill of a trademark or service mark of another, registers, traffics in, or uses a domain name that is identical to, confusingly similar to, or dilutive of such trademark or service work [sic] without regard to the goods or services of the parties..." S.Rep. No. 106–140, at 2 (1999)

site clicked on one of the Domain Names, they reached a web page that read "coming soon" (Stirpe Dep. at 23). Defendant is not sure of how many "hits" or visitors he had to this web site (Stirpe Dep. at 26).

Plaintiffs sent a cease and desist letter to Defendant on July 13, 1999 and asked Defendant to cease use of and transfer ownership of the Domain Names. In response, Defendant sent a letter explaining his purported intent in creating the web site and registering the Domain Names and concluded, "If a hotel casino were not interested in becoming involved with this site, we are willing to lease the domain name we have registered to them for their discretionary use" (Ex. A, Stirpe letter dated Sept. 28, 1999). In the past, Stirpe offered Christies, a well known auction house, to lease the domain names <christiesimages.com>, <christiesimages.org> and <christiesimages.net> for $1500 per month (Ex. C), and has placed "a couple" of domain names for sale with an Internet domain name broker, Great Domains, for "a couple of million dollars or something" (Stirpe Dep. at 33–35).

## II. SUMMARY JUDGMENT STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Securities and Exchange Comm'n v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982) (citations omitted).

The party moving for summary judgment has the burden of showing the ab-

sence of a genuine issue of material fact, and the court must view all facts and inferences drawn in the light most favorable to the responding party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted). *See also, Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (citation omitted), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once this burden has been met, "[t]he opposing party must then present specific facts demonstrating that there is a factual dispute about a material issue." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (citation and internal quotes omitted).

■ Defendant has failed to respond to Plaintiffs' Motion for Summary Judgment, and Plaintiffs have invoked Local Rule 7–2(d) which provides, "The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." However, within the Ninth Circuit, a trial court may not grant summary judgment unless the moving party bears its burden of showing it is entitled to such a judgment. *See Cristobal v. Siegel*, 26 F.3d 1488, 1491 (9th Cir.1994). *See also, Evans v. Independent Order of Foresters*, 141 F.3d 931, 932 (9th Cir.1998). A local rule that directs a court to grant a summary judgment motion solely because no opposing papers have been filed is inconsistent with Rule 56 of the Federal Rules of Civil Procedure, and therefore is impermissible under Rule 83, which prohibits rules of court inconsistent with the Federal Rules of Civil Procedure. *See Cristobal*, at 1491. Therefore, the Court will decide Plaintiffs' motion on the merits, and the issue before the Court is whether the present case contains any genuine issues of material fact precluding summary judgment pursuant to Fed.R.Civ.P. 56(c) or

whether judgment is appropriate as a matter of law.

## III. ANTI–CYBERSQUATTING CONSUMER PROTECTION ACT CLAIM

The applicable sections of the Anti–Cybersquatting Consumer Protection Act provide:

(1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark; [or]

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark ... 15 U.S.C. § 1125(d).

Plaintiffs contend that summary judgment is appropriate on this claim, and therefore have the burden of showing that there is no factual dispute as to whether the Domain Names registered by Stirpe are confusingly similar to Plaintiffs' trademarks and that Stirpe had the bad faith intent required under the statute.

■ Plaintiffs have met their burden of proving that the Domain Names are confusingly similar to Plaintiffs' trademarks. The Domain Names all consist of the Plaintiffs' trademarks coupled with a description of their services (*e.g.,* <aladdinhotelcasino.com>) or their geographic location (*e.g.,* <circuscircuslasvegas.com>). Clearly, no reasonable fact finder could find that these Domain Names are not confusingly similar to Plaintiffs' trademarks. In addition, Defendant admitted that he believed consumers searching for Plaintiff Aladdin's web site might type, "Aladdin Hotel Casino.com" to try to find the site, and that he registered the Domain Names with the intent of attracting such confused consumers to his own site (Stirpe Dep. at 49–50). Therefore, there is no factual dispute as to whether or not the Domain Names registered by Stirpe are confusingly similar to Plaintiffs' trademarks.

■ Plaintiffs have failed to establish that there is no factual dispute as to whether or not Defendant had the bad faith intent required under the statute. The Act provides a non-exhaustive list of nine factors to be considered in determining whether a person has a bad faith intent:

(I) the trademark or intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct.

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous ... (15 U.S.C. § 1125(d)(1)(B)(i)).

Plaintiffs have presented evidence that Stirpe exhibited a bad faith intent in every possible way under the statutory factors. First, he has no trademark or intellectual property rights in the Domain Names. Second, the Domain Names do not consist of Defendant's legal name or a name otherwise used to identify him. Third, he has never used the Domain Names for the bona fide offering of services, because he never had the ability to offer hotel registration services. Fourth, Defendant never used the Domain Names for a bona fide noncommercial or fair use, but rather admitted his intent was to interject himself as a middleman between the casino hotels and their potential customers (Stirpe Dep. at 70–71). Fifth, Stirpe admitted that he intended to divert customers from Plaintiffs' official web sites (Stirpe Dep. at 49–50), and this clearly could harm the goodwill of Plaintiffs' trademarks by creating confusion as to Plaintiffs' sponsorship, affiliation or endorsement of the site. Sixth, Defendant offered to lease the Domain Names to Plaintiffs without having used the Domain Names in the bona fide offering of services, and Defendant has engaged in such conduct in the past, indicating a pattern of such conduct (Exs.A, C). Seventh, Defendant failed to maintain accurate contact information with NSI (Stirpe Dep. at 40–42). Eighth, Stirpe has registered multiple domain names that were distinctive at the time of registration, and are dilutive of those famous marks (Ex. A). Ninth, Plaintiffs' trademarks are distinctive and famous. In addition, the Court notes that Defendant's intent is further cast into doubt by the fact that it was unnecessary for Defendant to register the Domain Names in order to establish his proposed Las Vegas hotel web site. Once a user creates a web site, the user can create numerous links to other web pages within the site, without having an individual domain name for each page. Thus, Defendant has not provided an explanation for why he registered the Domain Names other than that they would divert traffic from Plaintiffs' official web sites to his own.

Despite the overwhelming evidence that Defendant had a bad faith intent when he registered the Domain Names, the Court declines to find such bad faith as a matter of law. After enumerating the nine factors to consider, the statute further mandates, "Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed or had reasonable grounds to believe that the use of the domain name

was a fair use or otherwise lawful" (15 U.S.C. § 1125(d)(B)(ii)). In his deposition, Defendant stated that he thought he had come up with an idea that the hotel casinos would be interested in participating in, and that he conducted research and relied on the advice of his counsel to determine that his conduct was not unlawful (Stirpe Dep. at 70–81). Therefore, there remains an unresolved issue of material fact regarding whether or not Defendant had a reasonable belief that his conduct was lawful, and Plaintiffs have failed to meet their burden on summary judgment.

## IV. TRADEMARK INFRINGEMENT CLAIM

Plaintiffs argue they are entitled to summary judgment on their trademark infringement claim. Pursuant to 15 U.S.C. § 1114(1):

> Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

 There is no dispute over any issues of material fact regarding Plaintiffs' trademark infringement claim. Plaintiffs all own federal trademark rights to their respective hotel casino names, and Defendant admitted he did not gain Plaintiffs' permission to use their trademarks in his web site (Stirpe Dep. at 52 ). To succeed on a claim for Section 1114 trademark infringement, the plaintiff need only show that Defendant's use of the mark is likely to cause confusion in the consuming public. *See Metro Publishing, Ltd. v. San Jose Mercury News,* 987 F.2d 637, 640 (9th Cir.1993). Defendant has admitted that

consumers are likely to be confused by the similarity between the Domain Names and Plaintiffs' trademarks. In fact, this consideration was an essential assumption upon which the viability of his web site depended. As Defendant admitted himself, the purpose of the web site was "[t]o see if it would—to work—if people would actually be drawn to the site with no advertising it, no promoting it". To see if they would, you know, come there on their own (Stirpe Dep. at 21). In order to draw customers to his web site without promoting or advertising the site, Defendant deliberately registered domain names containing Plaintiffs' well known trademarks, in the hopes that customers searching for Plaintiffs' web sites would stumble upon his page instead (Stirpe Dep. at 49). Therefore, the Court finds that all material elements of Plaintiffs' trademark infringement claim have been admitted by Defendant. Because the Defendant has admitted the necessary elements of trademark infringement under 15 U.S.C. § 1114, Plaintiffs are entitled to summary judgment on this claim.

## V. DILUTION CLAIM

Plaintiffs move for summary judgment of their claim brought pursuant to 15 U.S.C. § 1125(c), the Trademark Dilution Act. Courts have been willing to grant plaintiffs summary judgment on dilution claims and to find that defendants have violated the Act as a matter of law. *See e.g., Panavision International, L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir.1998); *Lozano Enterprises v. La Opinion Publishing Co.,* 44 U.S.P.Q.2d 1764, 1997 WL 745036 (C.D.Calif.1997); *Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227 (N.D.Ill.1996).

In order to prevail on their claims under the Federal Dilution Act, Plaintiffs must prove that (1) their marks are famous; (2) Defendant is making a commercial use of

the trademark in commerce; (3) Defendant's use began after the trademarks became famous; and (4) Defendant's use of the trademarks dilutes Plaintiffs' ability to identify and distinguish their goods and services. (15 U.S.C. § 1125(c); *Panavision International, L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir.1998).)

■ First, Plaintiffs trademarks are clearly famous. Millions of people have visited Plaintiffs properties and have been exposed to their trademarks. Plaintiffs spend millions of dollars advertising and marketing their services in the national media and on the Internet. As discussed above, the scheme devised by Defendant depended on the fact that Plaintiffs' trademarks were famous and that Internet users would come to Defendant's hotel casinos web site without him having advertised or promoted it. Clearly, it would defy common sense and logic for Defendant to now deny that Plaintiffs' trademarks are famous.

■ Second, Defendant has made commercial use of the trademarks in commerce. The Internet clearly qualifies as commerce within the meaning of the statute. *cf. Panavision International, L.P. v. Toeppen,* 141 F.3d 1316 (1998) (upholding summary judgment against the defendant and finding defendant's registration of plaintiff's marks in his Internet domain names was "commercial use" under dilution statutes). Through the Internet, Defendant purported to offer registration services with Plaintiffs' properties. Defendant also mailed a letter offering to lease the Domain Names to Plaintiffs. Clearly, offering to lease Plaintiffs the use of their own trademarks is a commercial use of Plaintiffs' trademarks in commerce. *See id.* at 1325 (finding "[Defendant's] commercial use was his attempt to sell the trademarks themselves.")

■ Third, as discussed above, Plaintiffs' trademarks were famous when Defendant registered the Domain Names. This is not a case where a person innocently registered a domain name unaware that it contained the trademark of another. Defendant knew that Plaintiffs' trademarks were famous and relied on that fact when he set up his web site and waited for people to find it without advertising or promoting it.

■ Finally, Defendant's use of the trademarks diluted Plaintiffs' ability to identify and distinguish their goods and services. The Ninth Circuit has recognized that "a significant purpose of a domain name is to identify the entity that owns the web site,"and "using a company's name or trademark as a domain name is also the easiest way to locate that company's web site." *See id.* at 1327. If customers use a search engine to find Plaintiffs' web sites and are forced to wade through hundreds of web sites, they may never find Plaintiffs' official web sites. *Id.* In addition, "[p]rospective users of plaintiff's services who mistakenly access defendant's web site may fail to continue to search for plaintiff's own home page, due to anger, frustration or the belief that plaintiff's home page does not exist." *Id.* at 1327 (quoting District Court Judge Lechner, quoting, *Jews for Jesus v. Brodsky,* 993 F.Supp. 282, 306–07 (D.N.J.1998), quoting *Planned Parenthood v. Bucci,* 1997 WL 133313 at *4.) Further, permitting Defendant's unauthorized use of Plaintiffs' trademarks would put Plaintiffs' names and reputations at the mercy of Defendant. *Id. See also, Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227, 1240 (1996). Therefore, Stirpe's registration of Domain Names containing Plaintiffs' trademarks diluted those marks within the meaning of the Federal Trademark Act, 15 U.S.C. § 1125(c).

## VI. REMEDIES

 Plaintiffs are seeking an award of attorney fees, permanent injunctive relief and damages. Plaintiffs are entitled to summary judgment of their claims brought pursuant to 15 U.S.C. § 1114 for trademark infringement and 15 U.S.C. § 1125 for trademark dilution. For the reasons set forth below, the Court finds that Plaintiffs are entitled to permanent injunctive relief, attorney fees and damages.

 Pursuant to 15 U.S.C. § 1117(a) "the court in exceptional cases may award reasonable attorney fees to the prevailing party." In the Ninth Circuit, "generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent or willful." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir.1993). Plaintiffs argue that where there is proof of intentional infringement, it is an abuse of discretion not to award attorney fees. *See Imagineering, Inc. v. Van Klassens, Inc.*, 851 F.Supp. 532, 538 n. 7 (S.D.N.Y. 1994) *aff'd in part and rev'd in part on other grounds*, 53 F.3d 1260 (Fed.Cir. 1995), *cert. denied*, 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995). Defendant's conduct is indisputably willful as he has refused to comply with the preliminary injunction issued by the district court on March 13, 2000 by failing to transfer the Domain Names to Plaintiffs. Therefore, the Court finds that exceptional circumstances warrant and award of attorneys fees in this case. Plaintiffs have failed to submit any affidavits or documentation regarding the amount of their request for attorneys fees. Therefore, the Court directs Plaintiffs to submit such documentation so that the Court may determine what amount of Plaintiffs' attorneys' fees is reasonable and appropriate.

[14] Plaintiffs also seek damages for corrective advertising, noting that in the Ninth Circuit, it is permissible for a court to award damages for prospective corrective advertising. *See Adray v. Adry-Mart, Inc.*, 68 F.3d 362, 36 U.S.P.Q.2d 1546 (9th Cir.1995), *amended*, 76 F.3d 984, 37 U.S.P.Q.2d 1872 (9th Cir.1995). Plaintiffs admit, however, that it is impossible to ascertain how many consumers may have been diverted to Defendant's web site and seek "nominal damages" in the amount of $1000 per Domain Name, for a total of $15,000.

 The Court derives its authority to award damages in this case from Section 1117 of the Lanham Act which provides for recovery of (1) defendant's profits, (2) plaintiff's damages, and (3) costs of the action. In this case, Plaintiffs have been unable to demonstrate that Defendant profited from his actions or to establish specific damages. However, "an inability to show actual damages does not alone preclude a recovery under section 1117." *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 919 (Fed.Cir.1984). Section 1117 provides courts with considerable discretion to award damages based on equitable considerations. "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." 15 U.S.C § 1117(a). In fashioning such a remedy, the court should consider the particular circumstances of the case, such as the nature of the infringing actions and the intent with which they were motivated. *Cf. Bandag*, at 917–18.

 The Court finds that the particular circumstances of this case warrant an award of damages, despite the fact that Plaintiffs have been unable to specify the exact amount necessary to undo the harm caused by Defendant through corrective advertising. In reaching this conclusion,

the Court has considered the nature of Defendant's infringing actions, the intent with which they were motivated, and other relevant circumstances. Defendant's actions are boldly willful in that he refuses to comply with the Preliminary Injunction issued in this case or to take any other actions to remedy or correct his wrongdoing. Further, Defendant is the sole cause of Plaintiffs' inability to calculate their damages, because Defendant alone knows the extent to which Plaintiffs' customers were misdirected to his web site, but claims to be unable to provide this information to Plaintiffs (Stirpe Dep. at 26). Therefore, the Court finds that the equitable considerations in this case justify an award of damages.

 The Court finds that the amount requested by Plaintiffs, $1000 per Domain Name, is not nominal and would be excessive under the circumstances. The Court may award damages as compensation to Plaintiffs, but not as a penalty against Defendant, and all awards are subject to the principles of equity. *See Bandag*, at 917. Given the fact that Defendant has not profited from his actions, the Court finds an award of $500 per Domain Name sufficient to compensate Plaintiffs without imposing a penalty upon Defendant.

In conclusion, Plaintiffs are entitled to summary judgment on their trademark infringement and dilution claims, but have failed to demonstrate the lack of any issue of material fact regarding their Anti–Cybersquatting Consumer Protection Act claim. Therefore, Plaintiffs are entitled to permanent injunctive relief and court costs. In addition, due to the wilfulness of Defendant's actions, Plaintiffs are entitled to an award of reasonable attorney fees and damages in the amount of $500 per Domain Name.

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (# 21) is GRANTED in part and DENIED in part, judgment is entered as follows:

1. The Preliminary Injunction (# 17, entered March 13, 2000) is hereby declared to be a Permanent Injunction.

2. Plaintiffs are awarded damages from Defendant in the amount of $500 per Domain Name, for a total of $7,500.

3. Plaintiffs are awarded costs and attorneys fees in an amount to be determined from a subsequent tender of evidence and documentation due no later than 30 days hence.

4. The Court finds insufficient evidence to find, as a matter of law, that Defendant has violated the Anti–Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).