**CARDSERVICE INTERNATIONAL, INC., Plaintiff,**

v.

**Webster R. McGEE,**

and

**WRM & Associates, d/b/a/ EMS—Card Service on the Caprock, Defendants.**

**Civil Action No. 2:96cv896.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 16, 1997.

Benjamin J. Madison, Gregory N. Stillman, Hunton & Williams, Norfolk, VA, for plaintiff.

Webster R. McGee, WRM & Associates, Beaumont, TX, pro se.

## MEMORANDUM OPINION, FINAL ORDER, AND PERMANENT INJUNCTION

CLARKE, District Judge.

This matter comes before this Court for the hearing of evidence in the bench trial of whether Plaintiff Cardservice International, Inc., is entitled to a permanent injunction pursuant to 15 U.S.C. Section 1116[1] against Defendants Webster R. McGee and WRM & Associates banning the use by the Defendants of words similar to Plaintiff's trademark "Cardservice". This Court, in a prior hearing in which the Defendants participated, previously entered a preliminary injunction against the Defendants in this matter. Defendants have proceeded throughout these proceedings *pro se.*[2] The Court ruled from the Bench and awarded Cardservice International a permanent injunction and reasonable attorneys fees. The Court hereby incorporates that ruling into this Opinion and Order. For the reasons stated below, the Court GRANTS Plaintiff's request for a permanent injunction and further ORDERS the Defendants to pay Plaintiff's reasonable attorneys fees.

### I.

This action was brought by Cardservice International seeking injunctive relief and damages for alleged infringements of its trademark "Cardservice" by the Defendants. Cardservice International provides credit and debit card processing and processes "billions of dollars in transactions annually." Plaintiff's Exhibit 3 at 2. Cardservice International registered the trademark "Cardservice International" with the United States Patent and Trademark Office as Reg. No. 1,864,924 effective Nov. 29, 1994. Plaintiff's Exhibit 1. No claim was made to the exclusive right to the word "international." Plaintiff's Exhibit 1.

McGee, through his sole proprietorship WRM & Associates has also provided credit and debit card services. Cardservice International claims that in 1994, McGee applied to become a representative of Cardservice International. McGee claims that he was only associated with an agent of Cardservice International, but never sought to become associated with Cardservice International itself. In March of 1995 and without the permission of Cardservice International, McGee registered the internet domain name[3] "cardservice.com" with Network Solutions, Inc., the company responsible for regulating use of domain names on the internet. In advertisements located at the internet site "cardservice.com", McGee advertised merchant card services through a company held out to be "EMS—Card Service on the Caprock". *See* Plaintiff's Exhibits 10 & 11.

In May and August 1995, Cardservice International contacted McGee by letter demanding that McGee "cease and desist all Cardservice related activity." Plaintiff's Exhibits 8 & 9. Subsequent discussions between Cardservice International and McGee focused on McGee's use of "cardservice.com". When McGee refused to surrender the domain name, Cardservice International retained counsel, who called McGee's attention to Cardservice International's trademark and again demanded that McGee cease and desist use of the term "Cardservice" and any variation of it on the internet.

McGee refused to relinquish "cardservice.com" or to cease use of "Card Service" on the internet. McGee claimed that the

---

**1.** Section 1116 states in relevant part:
  The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title.
  15 U.S.C. Section 1116.

**2.** WRM & Associates is a sole proprietorship owned by Defendant Webster McGee. Because only McGee has an ownership interest in WRM & Associates, this Court allowed McGee, in addition to himself, to represent WRM & Associates *pro se.*

**3.** For a discussion of domain names and the internet, see, e.g., *Panavision Int'l v. Toeppen,* 945 F.Supp. 1296 (C.D.Cal.1996).

name of his business inserts a space between "card" and "service" and that he is therefore not in violation of the trademark laws. He further claimed that "cardservice.com" was one word because the internet does not allow spaces in domain names. When Cardservice International expanded its services onto the internet, it was forced to use the domain name "cardsvc.com".

Cardservice International then filed this action in September 1996. Cardservice International filed counts alleging violations of Section 32 of the Lanham Act, 15 U.S.C. Section 1114, for trademark infringement; Section 43(a) of the Lanham Act, 42 U.S.C. Section 1125(a), for unfair competition; and common law unfair competition, misappropriation, and unjust enrichment. McGee answered these allegations and filed counterclaims seeking declaratory relief that he was the proper owner of the domain name "cardservice.com.", that Cardservice International had interfered with Defendants' business relationships by attempting to have the domain name "cardservice.com" transferred from McGee to Cardservice International, and that Cardservice International had engaged in trademark misuse and wire fraud.

By Order dated October 30, 1996, this Court granted Plaintiff's motion for a preliminary injunction and ordered the Defendants to end all direct and indirect use of any variation of "cardservice" on the internet and to delete all content from the internet site "cardservice.com". McGee then sought to amend his answer and counterclaim to assert personal jurisdiction and venue defenses. By Order dated December 18, 1996, this Court found that the Defendants' amendment was untimely and that, according to Federal Rule of Civil Procedure 12(h), the Defendants had waived any defenses involving personal jurisdiction and venue. By that Order, this Court also granted Plaintiff's Motion to Dismiss the Defendants' counterclaims and dismissed Plaintiff's damage claims, leaving only equitable issues and thereby obviating the need for a jury trial.

Cardservice International then filed a Motion to Show Cause Why Defendants Should Not Be Held in Contempt alleging violations by the Defendants of this Court's preliminary injunction. Cardservice International alleged that McGee, after entry of the preliminary injunction, continued to refer to Cardservice International at his internet site identified by the domain name "wrm.com" and introduced evidence indicating that McGee intended to use a new site identified by the domain name "csimall.com"—a name apparently derived the letters "CSI" which has been used to refer to Cardservice International—to engage in "guerilla warfare" on the internet against Cardservice International. *See* Plaintiff's Exhibit 25. On January 13, 1997, this Court found that McGee had violated the preliminary injunction and found McGee in contempt. The Court ordered that McGee pay attorneys fees and expenses incurred in the show cause motion. The Court further ordered that the parties meet to devise a plan for ending McGee's violations. On January 14, 1997, the Court entered an Order agreed to by both Cardservice International and McGee setting forth a plan to alleviate McGee's violations of the preliminary injunction.

On January 13, 1997, the Court also proceeded with the bench trial on the merits of Cardservice International's claim in which Cardservice International sought attorneys fees and a permanent injunction. McGee indicated his desire to end the litigation and stated that he would not contest Cardservice International's evidence.

## II.

The Court ruled from the Bench that Cardservice International is entitled to a permanent injunction against McGee and WRM & Associates requiring the Defendants to cease use of any variation of the registered mark "Cardservice" and to relinquish any interest in the domain name "cardservice.com". Federal Rule of Civil Procedure 65(d)[4] requires this Court to state the rea-

**4.** Rule 65(d) states in relevant part: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in rea- sonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained...." F.R.C.P. 65(d).

sons for the grant of the permanent injunction.

■ First, the Court addresses a preliminary issue. McGee has argued that because he registered the domain name "cardservice.com" with Network Solutions, he is entitled to the domain name. McGee cites Network Solutions' policy of granting domain names on a first-come-first-served basis. Such a policy cannot trump federal law. Holders of valid trademarks under federal law are not subject to company policy, nor can the rights of those trademark holders be changed without congressional actions. If trademark laws apply to domain names, anyone who obtains a domain name under Network Solutions' "first-come-first-served" policy must do so subject to whatever liability is provided for by federal law.

Holders of valid trademarks are protected from infringements of that trademark by the Lanham Act. According to Section 32 of the Lanham Act

> Any person who shall, without the consent of the registrant—
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ...

shall be liable for trademark infringement. 15 U.S.C. Section 1114(1). Section 43 of the Lanham Act applies to

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities....

15 U.S.C. Section 1125(a). The Fourth Circuit has stated that in order to prevail in actions under these statutes, "a complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon v. Alpha of Virginia,* 43 F.3d 922 (4th Cir.1995).

■ It is undisputed that Cardservice International owns a valid, protectible trademark. Until McGee informed the Court that he would not contest Cardservice International's evidence, he primarily argued that his use of "cardservice.com" and "Card Service on the Caprock" would not cause confusion on the internet. The Court disagrees and finds that there is a likelihood of confusion between Cardservice International's registered mark and McGee's use of "cardservice.com" and "Card Service" on the internet.

The factors relevant to a determination of whether there is a likelihood of confusion are as follows:

> a) the strength or distinctiveness of the mark;
>
> b) the similarity of the two marks;
>
> c) the similarity of the goods/services the marks identify;
>
> d) the similarity of the facilities the two parties use in their businesses;
>
> e) the similarity of the advertising used by the two parties;
>
> f) the defendant's intent;
>
> g) actual confusion.

*Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1527 (4th Cir.1984). Not all of these factors are relevant to any given set of facts, nor must all factors be in the registrant's favor for a finding of confusion. *Id.*

In this case, several of the *Pizzeria Uno* factors favor a finding that McGee's use of "cardservice.com" and "Card Service" is likely to cause confusion. It is clear that

McGee's use of "cardservice.com" and "Card Service on the Caprock" are strikingly similar to Cardservice International's registered mark. Although McGee's use of the term "Card Service" does not exactly duplicate "Cardservice", minor differences between the registered mark and the unauthorized use of the mark do not preclude liability under the Lanham Act when the unauthorized use is likely to cause confusion. *See Lone Star Steakhouse, supra* (finding use of "Lone Star Grill" to be an infringement of registered mark "Lone Star Steakhouse and Saloon"). The use of the term "cardservice" in Defendants' domain name exactly duplicates the registered mark "Cardservice".

Further, both parties are using the internet as the facility to provide their services. Because of the nature of the internet and domain names in particular, this factor becomes even more important in cases of trademark infringement over the internet. Domain names present a unique circumstance when determining the likelihood of confusion caused by possible trademark violations. Traditionally, trademark disputes involved two or more parties using the same or similar mark. *Intermatic Inc. v. Toeppen,* 947 F.Supp. 1227, 1233–34 (N.D.Ill.1996) (Williams, Mag.). With regard to domain names, however, only one party can hold any particular domain name. *Id.* Who has access to that domain name is made even more important by the fact that there is nothing on the internet equivalent to a phone book or directory assistance. A customer who is unsure about a company's domain name will often guess that the domain name is also the company's name. For this reason, "a domain name mirroring a corporate name may be a valuable corporate asset, as it facilitates communication with a customer base." *MTV Networks, Inc. v. Curry,* 867 F.Supp. 202, 203–04 n. 2 (S.D.N.Y.1994). Thus, a domain name is more than a mere internet address. It also identifies the internet site to those who reach it, much like a person's name identifies a particular person, or, more relevant to trademark disputes, a company's name identifies a specific company.

Because of McGee's use of "cardservice.com", Cardservice International has no access to an internet domain name containing its registered mark, and must use a different domain name. Cardservice International's customers who wish to take advantage of its internet services but do not know its domain name are likely to assume that "cardservice.com" belongs to Cardservice International. These customers would instead reach McGee and see a home page for "Card Service". They would find that McGee's internet site offers advertisements for and provides access to the same services as Cardservice International—credit and debit card processing. Many would assume that they have reached Cardservice International or, even if they realize that is not who they have reached, take advantage of McGee's services because they do not otherwise know how to reach Cardservice International. Such confusion is not only likely, but, according to McGee, has actually occurred at least four or five times since he began using "cardservice.com". Transcript of Preliminary Injunction Hearing at 366.

■ Such a result is exactly what the trademark laws were designed to protect against. Cardservice International has obtained a trademark to ensure that the name "cardservice" will be associated by consumers only with Cardservice International. Regardless of the fact that McGee's business is small compared to Cardservice International's, confusion will result among consumers who are seeking Cardservice International by searching for its trademark as a domain name on the internet. The fact that Cardservice International has been awarded a trademark means that it should not be forced to compete with others who would also use the words "cardservice". The terms of the Lanham Act do not limit themselves in any way which would preclude application of federal trademark law to the internet. Unauthorized use of a domain name which includes a protected trademark to engage in commercial activity over the internet constitutes use "in commerce", 15 U.S.C. Section 1114(1), of a registered mark. Such use is in direct conflict with federal trademark law. *See ActMedia, Inc. v. Active Media Int'l,* No. 96c3448, 1996 WL 466527 (N.D.Ill. July 17, 1996) (finding defendant's use of domain name "actmedia.com" precluded plaintiff

from reserving the domain name incorporating its registered mark and therefore violated 15 U.S.C. Section 1125); *see also Panavision Int'l v. Toeppen,* 945 F.Supp. 1296 (C.D.Cal.1996) (finding defendant's reservation of domain name "panavision.com" which incorporated registered mark of plaintiff to be in violation of the Federal Trademark Dilution Act of 1995, 15 U.S.C. Section 1125(c)).

Accordingly, the Court finds that McGee's use of "cardservice.com" and "Card Service on the Caprock" constitutes trademark infringement in violation of the Lanham Act and that Cardservice International is entitled to a permanent injunction against such use pursuant to 15 U.S.C. Section 1116. The Court emphasizes that its finding against McGee is based on evidence which McGee ultimately chose not to contest at trial.

## IV.

■ In addition to a permanent injunction, Cardservice International requested that reasonable attorneys fees incurred in pursuing the preliminary and permanent injunctions be assessed against McGee. The Court ruled from the Bench that Cardservice International's request for attorneys fees would be granted.

In trademark infringement cases, the court may award reasonable attorneys fees in "exceptional cases." 15 U.S.C. Section 1117(a). The decision to grant attorneys fees in such exceptional cases rests within the discretion of the trial judge. *Shell Oil Co. v. Commercial Petroleum, Inc.,* 928 F.2d 104, 108 n. 6 (4th Cir.1991). In order for the trial court to exercise its discretion and award attorneys fees, the Fourth Circuit has interpreted Section 1117 to require that a prevailing plaintiff "show that the defendant acted in bad faith." *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.,* 958 F.2d 594, 599 (4th Cir.), *cert. denied,* 506 U.S. 862, 113 S.Ct. 181, 121 L.Ed.2d 126 (1992). In reaching this conclusion, the Fourth Circuit relied upon legislative history referring to acts characterized as "malicious, fraudulent, deliberate and willful." *Id.* at 600.

In cases in which there is no showing that the infringement was intentional at the time the defendant adopted the registrant's mark, or when such intent is unclear from the record, "[u]nreasonable post-adoption conduct rising to the level of bad faith could be evidence of the exceptional nature of a case, but the reasonable continuation of litigation should not automatically be such." *Moore Business Forms, Inc. v. Ryu,* 960 F.2d 486, 492 (5th Cir.1992).

In this case, there is some dispute as to whether McGee knew he was appropriating Cardservice International's registered mark when he began using "Card Service on the Caprock" and the domain name "cardservice.com." At the least, McGee did know of the existence of Cardservice International and had done some work for an agent of Cardservice International. If this were all that was in the record, it is doubtful that this case would rise to the level of one involving "exceptional circumstances."

McGee's conduct after Cardservice International notified him of the trademark infringement and his conduct after the initiation of this litigation, though, leads this Court to find that he was acting in bad faith and with malicious intent. McGee's response to Cardservice International's attempts to protect its registered mark was not to determine whether he was in fact in violation of the mark, but to post statements at "cardservice.com" accusing Cardservice International of trying to steal his domain name. Plaintiff's Exhibit 15 at 1. In addition to accusing Cardservice International of theft, McGee used "cardservice.com" to refer readers to competitors of Cardservice International, which McGee referred to as the "Good Guys." Plaintiff's Exhibit 15 at 3. Later, McGee referred to guerilla warfare and the use of a new domain name "csimall.com". Plaintiff's Exhibit 25 at 2. McGee also told Cardservice International that he was about to use the internet to "'bad mouth' the heck out of CSI." Plaintiff's Exhibit 26 at 1. In this vein, McGee issued the following warning to Cardservice International: "CSI can expect the internet not to be a source of additional business. Quite the contrary. The internet *(with my help)* may divert some of CSI's potential business elsewhere." Plaintiff's Exhibit 26 at 2 (emphasis added).

Such malicious actions and statements are not made in the "reasonable continuation of litigation" and indicate an intention by McGee to use Cardservice International's registered mark to harm the company's reputation and ability to do business on the internet. The Court finds that Cardservice International has fulfilled its burden of demonstrating bad faith on the part of McGee and that an award of attorneys fees is warranted.

The Court further finds that the attorneys fees presented by the Plaintiff, see Plaintiff's Exhibit 27, in the amount of $59,591.25 are reasonable and sets its award in that amount. This amount shall be in addition to the $3,655.00 awarded as reasonable attorneys fees to Cardservice International for its expenses in pursuing its Motion to Show Cause pursuant to this Court's Order dated January 14, 1997.[5]

## V.

### ORDER AND PERMANENT INJUNCTION

Pursuant to authority vested in this Court by 15 U.S.C. Section 1116, it is hereby ORDERED that the Defendants, their agents, servants, employees, successors, assigns, any others working in concert with the Defendants, including but not limited to internet "search engines", and anyone else with actual notice of this injunction, shall forthwith and as soon as possible cease all direct or indirect use of the words "cardservice", "card service", or any variation thereof, including but not limited to "csi" or "csimall", in the Defendants' internet identification, domain name, advertising, text, operation, or maintenance of any internet site, or in any communications over the internet in relation to business activities, or in the provision of any services through the internet.

It is further ORDERED that the Defendants shall forthwith and as soon as possible relinquish all interests in the domain names "cardservice.com" and "csimall.com".

5. The figure of $59,691.25 was reached by subtracting the $3,655.00 awarded in the Order dated January 14, 1997, from Cardservice International's total attorney's fees of $63,346 which

It is further ORDERED that the Defendants shall pay to the Plaintiff reasonable attorneys' fees and expenses in the amount of $59,691.25. This amount shall be in addition to the $3,655.00 Defendant was ordered to pay as reasonable attorney's fees pursuant to this Court's Order dated January 14, 1997.

This Court reserves jurisdiction over this matter in order to enforce its findings and this Permanent Injunction.

The Clerk is DIRECTED to send a copy of this Order to counsel for the Plaintiff and to the Defendants.

IT IS SO ORDERED.

included expenses in pursuit of the preliminary injunction, permanent injunction, and the Motion to Show Cause.