**MASTERCARD INTERNATIONAL INCORPORATED, a corporation, Plaintiff,**

v.

**Robin TREHAN, an individual, Defendant.**

**Case No. 1:08–cv–05793.**

United States District Court, N.D. Illinois, Eastern Division.

May 4, 2009.

Mark Van Buren Partridge, Alexis Elizabeth Payne, David M. Beeman, Pattishall, McAuliffe, Newbury Hilliard & Geraldson LLP, Chicago, IL, for Plaintiff, MasterCard International Incorporated.

## FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER RELIEF

RUBEN CASTILLO, District Judge.

### I. INTRODUCTION

This action has come before the Court upon the pleadings and proceedings of record. Plaintiff, MasterCard International Incorporated ("MasterCard"), and Defendant, Mr. Robin Trehan ("Trehan"), have agreed to a compromise and settlement of MasterCard's claims in this Civil Action and all claims, defenses and counterclaims that were or could have been brought between them in this Civil Action. The parties stipulate, consent to and agree that the findings of fact, conclusions of law and judgment are agreed, and that this Final Judgment and Order for Permanent Injunction and Other Relief ("Order") is entered by consent.

WHEREFORE, with the consent of the parties, through their undersigned attorneys, the Court enters the following agreed findings of fact, conclusions of law, and Order for the relief stated herein.

### II. STATEMENT OF FACTS

#### A. MasterCard and the MASTERCARD Marks

MasterCard is a global payments solutions company. Through its predecessors in interest, MasterCard has been in the

payment card business since 1966 and has operated under the MASTERCARD name and mark since at least as early as 1980. MasterCard manages a family of payment card brands, including MASTERCARD, throughout the United States and the world. MasterCard administers and licenses its member financial institutions and merchants to participate in the MASTERCARD payment program under the MASTERCARD and Red and Yellow Interlocking Circles Device trademarks and service marks (the "MASTERCARD Marks").

MasterCard owns numerous federal registrations for its MASTERCARD Marks, including the following:

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| MASTERCARD | 2,212,783 | Dec. 22, 1998 | Magnetic encoded cards; magnetic encoded card readers; telecommunications equipment, namely point of transaction terminals; and computer software for transmitting, displaying and storing transaction, identification and financial information for use in the financial services, banking and telecommunications industries. |
| This mark is lined for the colors red and yellow orange. | 2,168,736 | Jun. 30, 1998 | Travel assistance services, namely, arranging travel tours, making replacement and emergency reservations and booking for transportation. |
| MasterCard | 2,077,221 | Jul. 8, 1997 | Travelers cheque services, namely the administration of issuance, redemption and processing of travelers cheques. |
| The mark is lined for the colors red and yellow. | 1,890,786 | Apr. 25, 1995 | Pens, pencils, pen stands, paper weights, letter openers, notebooks, metal book marks. |

| Mark | Reg. No. | Reg. Date | Goods/Services |
|---|---|---|---|
| | 1,814,279 | Dec. 28, 1993 | Financial services; namely, providing credit card, debit card, travelers cheque, travel financial assistance, cash disbursement, and transaction authorization and settlement services. |
| | 1,738,276 | Dec. 8, 1992 | Printed matter and publications; namely, credit cards and debit cards, pamphlets, brochures, newsletters and magazines of a financial nature. |
| MasterCard | 1,604,606 | Jul. 3, 1990 | Printed matter and publications, namely bank cards, pamphlets, brochures, newsletters and magazines of a financial nature. |
| MASTERCARD | 1,398,272 | Jun. 24, 1986 | Textile machinery, namely carding machines. |
| | 1,365,901 | Oct. 15, 1985 | Services, namely, providing bank card services. |
| MasterCard | 1,292,519 | Aug. 28, 1984 | Financial services-namely, assisting its members in the sale of travelers' cheques, integrated funds management programs, and money order services |
| MasterCard | 1,257,853 | Nov. 15, 1983 | Financial services-namely, providing bank card services. |
| MasterCard | 1,186,117 | Jan. 12, 1982 | Financial services-namely, providing bank card services. |

All of the above-referenced registrations are valid and subsisting. All of the above-referenced registrations are also incontestable in accordance with 15 U.S.C. §§ 1064 and 1115(b), and are conclusive evidence of the exclusive right to use the MASTERCARD Marks in connection with the registered goods. 15 U.S.C. § 1115(b).

In addition to its trademark registrations, MasterCard has registered numerous domain names containing the name and mark MASTERCARD or variants thereof, including, inter alia, "MASTERCARD.COM", "MASTERCARD.NET", "MASTERCARD.ORG", "MASTERCARDONLINE.COM", "MASTERCARDONLINE.NET", and "MASTERCARDONLINE.ORG". The earliest of these registered domain names, "MASTERCARD.COM", was registered on July 27, 1994.

MasterCard, its licensees and its predecessors in interest have sold many billions of dollars worth of financial services under its MASTERCARD Marks in the United States and around the world and have spent substantial sums in advertising its products and services under the MASTERCARD Marks. As a result of such extensive sales and advertising, the MASTERCARD Marks have become famous in the United States, as well as internationally, and represent valuable goodwill.

### B. Trehan's Registration and Use of the Infringing Domain Names

In March, 2008, over twenty-five years after MasterCard's registration of MASTERCARD and almost fourteen years after MasterCard's registration of MASTERCARD.COM, Trehan registered the following domain names ("the Infringing Domain Names"):

# मास्टरकाई.com

and

# mastércard.com

The first Infringing Domain Name is the Hindi spelling of <<mastercard.com>, which is pronounced the same as "MasterCard" and has the same meaning. The second Infringing Domain Name is identical in appearance to <<mastercard.com> but for the addition of a diacritical mark (accent mark above the "e"). The Infringing Domain Names resolved to website parking pages containing hyperlinks to credit card and loan services offered by MasterCard's competitors.

On May 5, 2008, Trehan sent an e-mail to MasterCard stating, in relevant part,

The reason for my email is, I am owning International domain name for MasterCard in Hindi, and in Latin.http://XN—11BTH3CLB6C6BE0MF.COM/in hindi. Most widely spoken language in India http://xn—mastrcard-e4a.com/in Latin I have attached the name for your convenience. I am willing to sell it to Mastercard Corp. Please let me know in case interested, It might fit well with Mastercard Global expansion.

On May 8, 2008, MasterCard responded to Trehan's e-mail and expressed no interest in the domains.

### C. MasterCard's Complaint Against Trehan

On October 9, 2008, MasterCard filed its Complaint against Trehan alleging counts for cybersquatting under the Anti-cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and the common law of the various states; unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, and the common law of the various states, including the State of Illinois; and trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

Trehan attempted to cancel his registrations for the Infringing Domain Names on October 17, 2008. The attempted cancellation occurred before Trehan was personally served with the Complaint on October 31, 2008. The Registrar of the domain names blocked Trehan's attempted cancellation, and the Infringing Domain Names are now on "Registrar Lock" pending a decision by this Court.

On November 21, 2008, this Court ordered an entry of default against Trehan for failure to timely appear, answer or

otherwise plead to the Complaint. This Court retained jurisdiction to enter a specific default judgment.

Following the default, Trehan asserts that he registered and attempted to sell the Infringing Domain Names as a work of art. He also asserts that he cancelled registration of the Infringing Domain Names before receiving notice of the Complaint. After cancellation, Trehan asserts, the Registrar GoDaddy reinstated his registrations without his consent, which he believes was a violation of his privacy. He asserts that the Registrar should not allow infringing domain names to be registered in the first place, and that a foreign domain name could only be accessed by users with a foreign keyboard. Next, Trehan states that the parking pages displayed at the website were created by a third-party registrar, not Trehan, and that he was not responsible for putting any hyperlinks to third parties or MasterCard's competitors on the parking pages. Trehan claims that he did not receive any financial gain from the parking pages. Finally, although Trehan agrees that the Infringing Domain Names are confusingly similar to the MASTERCARD Marks, he denies that the Infringing Domain Names are MasterCard's marks.

## III. CONCLUSIONS OF LAW

### A. Violation of the ACPA.

■■■ As its Complaint shows, MasterCard has established the *prima facie* elements for cybersquatting under the ACPA. 15 U.S.C. § 1125(d). The ACPA was enacted to combat cybersquatting, the "deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Virtual Works, Inc. v. Volkswagen of Am., Inc.,* 238 F.3d 264, 267 (4th Cir.2001) (internal quotation marks and citation omitted). In order to state a claim under the ACPA, MasterCard must allege that "(1) it had a

distinctive or famous mark at the time the domain name was registered, (2) the defendant registered, trafficked in, or used a domain name that is identical or confusingly similar to plaintiff's mark, and (3) the defendant had a bad faith intent to profit from that mark." *Flentye v. Kathrein,* 485 F.Supp.2d 903, 914 (N.D.Ill.2007) (*citing V'soske, Inc. v. Vsoske.com,* No. 00 C 6099, 2001 WL 546567, at *6 (S.D.N.Y. May 23, 2001)).

In this case, it is undisputed that MasterCard owns the well-known and famous MASTERCARD Marks, as well as the domain names "MASTERCARD.COM", "MASTERCARD.NET", "MASTERCARD.ORG", "MASTERCARDONLINE.COM", "MASTERCARDONLINE.NET", and "MASTERCARDONLINE.ORG". Trehan concedes that MasterCard's long use and extensive efforts to promote its brand have made the MASTERCARD Marks famous throughout the United States and the world. The validity of MasterCard's ownership of and exclusive rights to the MASTERCARD Marks are further established by the conclusive evidence of MasterCard's incontestable federal trademark registrations for the MASTERCARD Marks. 15 U.S.C. § 1115.

The Infringing Domain Names are confusingly similar to the MASTERCARD Marks because they are virtually identical to MasterCard's famous MASTERCARD Marks. One, the Hindi spelling of <<mastercard.com>, does not have the same appearance as MASTERCARD, but it is identical in translation, pronunciation, and meaning. The other, <<mastercard.com> with the addition of an accent mark, is also identical in sound and meaning, and is essentially indistinguishable in appearance from the MASTERCARD mark. Indeed, it is obvious that the Infringing Domain Names were registered

because of their confusing similarity to the MASTERCARD Marks. With constructive notice and (as shown by Trehan's e-mail to MasterCard) actual knowledge of MasterCard's trademark rights, Trehan registered, used and attempted to sell the Infringing Domain Names to MasterCard.

Therefore, MasterCard has established, and Trehan has admitted, that (1) Trehan has no rights or legitimate interest with respect to the Infringing Domain Names; (2) either as a marketing tool or a work of art, Trehan registered the Infringing Domain Names with the intent to sell the them to MasterCard; (3) the Infringing Domain Names are strikingly and confusingly similar to MasterCard's name and the MASTERCARD Marks; (4) Trehan is not currently engaged in any legitimate, non-infringing business under the Infringing Domain Names, and he has not previously conducted any legitimate, non-infringing business under the Infringing Domain Names; and (5) Trehan does not and has not done any legitimate, non-infringing business under the MASTER-CARD Marks; and (6) Trehan did not make a legitimate noncommercial or fair use of the Infringing Domain Names. Taken as admitted, these allegations of fact support a finding of bad faith pursuant to the factors set forth in the ACPA. 15 U.S.C. § 1125(d)(1)(B)(i). Accordingly, a violation of the ACPA has been established.

**B. Trehan Committed Trademark Infringement and Unfair Competition.**

To prevail on its trademark infringement and unfair competition claims under the Lanham Act and state law, MasterCard must show that it has trademark rights in the MASTERCARD mark and that Trehan's registration and use of the Infringing Domain Names is likely to cause confusion with MasterCard's marks. 15 U.S.C. § 1125(a); 15 U.S.C. § 1114;

*McGraw–Edison Co. v. Walt Disney Productions,* 787 F.2d 1163, 1166–1167 (7th Cir.1986).

**1. MasterCard's Trademarks Are Incontestable.**

MasterCard owns incontestable federal registrations for the MASTERCARD Marks. These incontestable registrations are conclusive evidence of the validity of the MASTERCARD Marks. 15 U.S.C. § 1115(b). As a result of MasterCard's extensive sales, advertising and promotion, MasterCard has acquired substantial goodwill in the MASTERCARD Marks, and they have become famous.

**2. There is a Strong Likelihood of Confusion Between the MASTERCARD Mark and the Infringing Domain Names.**

■ In assessing likelihood of confusion, courts in the Seventh Circuit examine several factors, including (1) similarity of the marks; (2) similarity of the products; (3) area and manner of concurrent advertising and use; (4) degree of care likely to be exercised by the consumer; (5) strength of MasterCard's marks; and (6) actual confusion. *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 897 (7th Cir.2001).

■ The MASTERCARD Marks are undisputedly famous and, therefore, are strong and entitled to a broad scope of protection. *See James Burrough Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 276 (7th Cir.1976) ("A mark that is strong because of its fame or its uniqueness, is more likely to be remembered and more likely to be associated in the public mind with a greater breadth of products or services than is a mark that is weak."); *see also Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254 (2nd Cir.1987) ("The unparalleled strength of [plaintiff's] mark demands that it be given broad protection against infringers."). Moreover,

the striking similarity of the MASTER-CARD Marks and Infringing Domain Names weighs heavily in favor of a finding of likelihood of confusion. No doubt, the value of the Infringing Domain Names to Trehan arose solely from their confusing similarity to the MasterCard name, MasterCard's domain names, and MASTERCARD Marks. In fact, the Infringing Domain Names so resemble the MASTERCARD Marks in sight, sound and appearance that confusion in inevitable. *See Cardservice Int'l v. McGee*, 950 F.Supp. 737 (E.D.Va.1997) (ordering defendant to relinquish "cardservice.com" domain name used to market credit and debit card processing services due to likely confusion with plaintiff's identical services sold under the registered mark CARDSERVICE INTERNATIONAL), *aff'd without op.*, 129 F.3d 1258 (4th Cir.1997). Trehan agrees that the Infringing Domain Names are confusingly similar to the MASTERCARD Marks.

In *Panavision, Int'l v. Toeppen*, the court recognized that "[a] significant purpose of a domain name is to identify the entity that owns the web site", and found that customers searching for a company's website will often search using a domain name identical or similar to the company's name or mark. 141 F.3d 1316, 1327 (9th Cir.1998) (*citing Cardservice*, 950 F.Supp. at 741). This case illustrates the Panavision court's observation. As shown by Trehan's e-mail, he recognized that users would naturally gravitate to the Infringing Domain Names in the belief that they were affiliated with MasterCard's websites. This is an example of initial interest confusion by users searching for MasterCard's websites, who were then redirected via links in the parking pages to the web pages of MasterCard's competitors. *See, e.g., Nissan Motor Co., Ltd. v. Nissan Computer Corporation*, 89 F.Supp.2d 1154, 1164 (C.D.Cal.2000), *aff'd. without opinion*, 246 F.3d 675 (9th Cir.2000) (finding a "di-

version of a consumer's initial interest in" plaintiff's products where defendant registered a domain name identical to plaintiff's business name). The confusion is not lessened, and may even increase, where the parking pages are provided by third-party registrars, rather than the registrant.

Taken as a whole, these factors support a finding that Trehan's registration and use of the Infringing Domain Names likely causes confusion and deception as to source, sponsorship, affiliation or endorsement, with MasterCard and its MASTERCARD Marks. This is sufficient to establish MasterCard's trademark infringement and unfair competition claims under the Lanham Act and state law.

### C. Trehan's Conduct Dilutes MasterCard's Famous Marks.

█ The Lanham Act defines dilution by blurring as an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c). Dilution can occur "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." Use of the mark must occur in commerce and after the mark becomes famous. *Id.*

█ As Trehan concedes, Trehan registered and attempted to sell the Infringing Domain Names well after the MASTERCARD Marks became famous. The attempted sale constitutes "use in commerce" for purposes of the Act. *Id.*; *Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227, 1240 (N.D.Ill.1996) (finding defendant's "intention to arbitrage" the domain name "sufficient to meet the 'commercial use' requirement of the Lanham Act"). Further, Trehan's registration and use of the Infringing Domain Names is likely to cause dilution by "lessen[ing] the capacity of [plaintiff] to identify and distinguish its

goods and services by means of the Internet." *Id.* at 1240; *see also Panavision,* 141 F.3d at 1326 ("Prospective users of plaintiff's services who mistakenly access defendant's web site may fail to continue to search for plaintiff's own home page, due to anger, frustration or the belief that plaintiff's home page does not exist") (citations omitted). Based on these facts, Trehan's registration of the Infringing Domain Names and the resulting use in connection with the parking pages is likely to cause dilution of MasterCard's famous MASTERCARD mark.

## IV. SETTLEMENT AGREEMENT

In connection with this Final Judgment by consent, MasterCard and Trehan have entered into a settlement agreement (the "Settlement Agreement"), the terms of which are hereby incorporated by reference.

**WHEREFORE, IT IS HEREBY OR-DERED, ADJUDGED AND DECREED THAT:**

1. Trehan, an individual, and all others in his active control, concert or participation with him, such as his agents, servants, employees, successors and assigns, are permanently enjoined and restrained from the following conduct, unless Master-Card expressly grants permission otherwise:

A. using the MASTERCARD Marks or the Infringing Domain Names or any translation thereof in any manner;

B. registering or maintaining any registration of the Infringing Domain Names, or any other names, words, designations or symbols consisting of, or otherwise confusingly similar to the MASTERCARD Marks or any translation thereof;

C. using the Infringing Domain Names or any other names, words, designations or symbols consisting of, or otherwise confusingly similar to the MASTERCARD Marks or any translation thereof;

D. in light of paragraph 1, above, using any names, words, designations or symbols consisting of, or otherwise confusingly similar to the MAST-ERCARD Marks or any translation thereof on any web site or web sites of Trehan;

E. in light of paragraph 1, above, using any names, words, designations or symbols consisting of, or otherwise confusingly similar to the MAST-ERCARD Marks or any translation thereof in any buried code, metatags, search terms, keywords, key terms, hit generating pages, or any other devices used, intended, or likely to cause any web site or web sites of Trehan to be listed by any Internet search engines in response to any searches that include any terms identical with or confusingly similar to the MASTERCARD Marks;

F. otherwise infringing the MASTER-CARD Marks;

G. making any description or representation stating or implying that MasterCard's goods or services, domain names, or web sites are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with Trehan; and

H. any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of Trehan's domain name, Trehan's web sites, products or services, with MasterCard.

2. That the Registrar of the Infringing Domain Names and Trehan, to the extent that he maintains any control over the Infringing Domain Names, shall transfer

the Infringing Domain Names to Master-Card.

3. This injunction shall not apply to third-party advertisements on Trehan's websites containing authorized uses of MasterCard's Marks displayed in a non-infringing manner.

4. This Court shall retain jurisdiction over this action for purposes of construing and ensuring compliance with this Order.

**IT IS SO ORDERED.**